UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONNIE P. SMITH,

                        Plaintiff,

         -against-

ERIC HALSTEAD, *et al.*,

                        Defendants.

**ORDER**

24-CV-6855 (CS)

---

Seibel, J.

      Plaintiff has moved for a preliminary injunction ordering the Orange County Correctional Facility ("OCCF") to lift restrictions on his ability to practice his religion. (ECF No. 107 at 4.) Specially, Plaintiff contends that he is an adherent of the Santeria religion, which requires that he have: (1) eleven beaded necklaces and two religious chains; (2) religious books in his cell; and (3) a religious altar in his cell, including pictures hung on the walls and above the doorway. (*See generally* ECF Nos. 120, 122.) Largely for the reasons set forth by Orange County (the "County"), (*see* ECF No. 138 ("County's Opp.")), Plaintiff has not made the required showing to obtain a preliminary injunction.

**I.**    **LEGAL STANDARD**

      "A plaintiff seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Green Haven Prison Preparative Meeting of the Religious Soc'y of*

*Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021).[1] "[A] party seeking a mandatory injunction – that is, as in this case, an injunction that will alter rather than maintain the status quo – must meet the more rigorous standard of demonstrating a clear or substantial likelihood of success on the merits." *Johnson v. Connolly*, 378 F. App'x 107, 108 (2d Cir. 2010) (summary order).[2] "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Johnson v. Miller*, No. 20-CV-622, 2021 WL 4805425, at *1 (N.D.N.Y. Aug. 9, 2021).

## II.  DISCUSSION

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Under the Free Exercise Clause of the First Amendment, "a generally applicable policy will not be held to violate a plaintiff's right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.'" *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

> [T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison

---

[1] Unless otherwise indicated, case quotations omit internal quotation marks, citations, alterations and footnotes.

[2] The Court will send Plaintiff copies of any unreported decisions cited in this Order.

officials furthers legitimate penological objectives.

*Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023).  Courts consider four factors in determining whether a regulation is reasonably related to legitimate penological interests:

> 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.

*Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990).  Unlike under RLUIPA, under the First Amendment the burden on the plaintiff's religious beliefs need not be substantial.  *See Kravitz*, 87 F.4th at 127.

### A.   Necklaces

As to the religious necklace claim, it is possible that a prison official's denial of a prisoner's request to keep religious necklaces in his cell might constitute a Free Exercise or RLUIPA violation.  *See Muniz v. McCall*, No. 23-CV-4224, 2024 WL 3522680, at *3-4, *5-6 (S.D.N.Y. July 24, 2024) (plaintiff stated claims under the Free Exercise Clause and RLUIPA based on denial of orisha beads).  But no such denial has occurred here.  Pursuant to OCCF's Personal Property Management Policy, inmates are allowed "[a] single religious medal that does not pose a security threat."  (ECF No. 137-1 ("Weed Aff.") ¶ 5; ECF No. 137-2 at 2.)  But exceptions to that rule can be and are offered.  After he arrived at OCCF, Plaintiff filed a grievance requesting permission to keep eleven beaded necklaces and two religious chains in his cell, and he admits that OCCF granted that request shortly thereafter.  (*See* ECF No. 120 at 1; ECF No. 137-3.)[3]  Plaintiff maintains that, during the April 2024 incident giving rise to other

---

[3] Citations to ECF Nos. 120 and 122 use the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

claims in this action, his religious necklaces were destroyed.  (*See* ECF No. 120 at 1-2.)  But the evidence shows that Plaintiff subsequently received a package with eight beaded necklaces, and that OCCF, after inspection, granted Plaintiff's request to keep those eight necklaces in his cell.  (*See* Weed Aff. ¶¶ 14-16.)  Plaintiff neither suggests otherwise nor contends that OCCF denied a request for additional necklaces.  Indeed, in an affidavit in support of the County's opposition to the instant motion, Sergeant Jesse Weed, OCCF's Programs/Grievance Supervisor, avers that Plaintiff made no requests for additional necklaces outside of the eight already approved.  (*See id.* ¶¶ 18-19.)  In short, Plaintiff has permission to keep all the necklaces he possesses, and thus he has not shown that he is suffering actual harm to his religious rights requiring a preliminary injunction.

      B.    **Books**

The same applies to Plaintiff's religious book claim.  Pursuant to OCCF's Library Services Policy, inmates may keep up to four books in their cell at one time, all of which can be religious books.  (*See* Weed Aff. ¶¶ 31-32; ECF No. 137-6 at 2.)  Plaintiff does not allege that his religion requires him to possess more than four religious books at one time, and in any event, Plaintiff has never made, and OCCF has never denied, such a request.  (*See* Weed Aff. ¶ 33.)  In fact, in September 2024, OCCF approved Plaintiff's only request relating to religious reading material – that Plaintiff be allowed to maintain possession of a package containing Santeria-related tarot cards and a religious book.  (*See id.* ¶ 34.)  Therefore, again, Plaintiff has not shown that he is suffering any actual harm entitling him to a preliminary injunction on his religious book claim.

### C. Pictures

Plaintiff's claim concerning religious pictures is on different footing because OCCF denied his request to place pictures on his cell walls. (*See* ECF No. 137-5; Weed Aff. ¶ 27.) Nevertheless, I find that Plaintiff is not likely to succeed on this claim.

#### 1. Free Exercise

In his declaration in support of the instant motion, Plaintiff explains that his religion requires certain images to be placed on the walls and by the doorway for protection. (*See* ECF No. 122 ("Plaintiff's Decl.") at 2-3.) Although OCCF's policy against affixing pictures to any part of the cell likely burdens this religious belief, the policy is reasonably related to legitimate penological interests. The County maintains that the policy promotes safety and security because pictures and similar items can be used to conceal a defect or intentional damage to the wall, such as a hole used to store contraband or an escape route. (*See* Weed Aff. ¶ 26.) It is without question that maintaining safety and security are legitimate penological interests. *See Jova v. Smith*, 346 F. App'x 741, 744 (2d Cir. 2009) (summary order); *see also Barnes v. Nuttall*, No. 22-35, 2023 WL 221727, at *2 (2d Cir. Jan. 18, 2023) (summary order) ("[P]reventing the flow of contraband in prison is certainly a legitimate penological interest."). And the policy is reasonably related to those interests. As the County explains, (*see* County's Opp. at 9), accommodating Plaintiff's request would require significant resources because officials would need to regularly inspect the areas behind the pictures for possible damage. And Plaintiff may still display religious pictures in his cell as long as they are not affixed to the wall. (*See* Weed Aff. ¶ 29.) Therefore, Plaintiff has not shown that he is likely to succeed on his Free Exercise claim related to religious pictures.

### 2. RLUIPA

For purposes of RLUIPA, "a substantial burden on religious exercise exists when an individual is required to choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion on the other hand." *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 348 (2d Cir. 2007). Plaintiff has not met this standard. Plaintiff maintains that "religious images placed on top of the entrance of the doorway will keep negative energy and forces out and will protect the living area of the devotee." (Plaintiff's Decl. at 2.) But Plaintiff does not explain why placing images near the doorway, which he is allowed to do, will not serve that same purpose. To the contrary, in his declaration, Plaintiff states that images "placed *by* any entrance or doorway" or "placed *behind* the entrance door" serve as spiritual protection. (*Id.* at 2, 3 (emphasis added).) It thus appears that Plaintiff's religious beliefs are not substantially burdened by OCCF's policy against hanging pictures on the wall. *See Bacon v. Reed*, No. 20-CV-5993, 2021 WL 2226855, at *3 (S.D.N.Y. June 1, 2021) ("A substantial burden is more than a mere inconvenience but rather involves, for example, a situation where an adherent is forced to modify his behavior and violate his beliefs.").[4]

The crux of Plaintiff's claim appears to be that his religion requires him to maintain a religious altar, which includes pictures, in his cell. (*See* Plaintiff's Decl. at 1-4.) But Plaintiff has provided no evidence that OCCF has prohibited him from maintaining such an altar. In fact, the County maintains that Plaintiff has been permitted to have, and indeed does have, a religious

---

[4] I thus need not address whether the ban on pictures on cell walls furthers a compelling governmental interest, although I tend to think that it does, or whether it is the least restrictive means of furthering that interest, although I tend to think that it is.

altar with pictures in his cell.  (*See* Weed Aff. ¶¶ 24, 29.)  Therefore, Plaintiff has not shown that he is likely to succeed on his RLUIPA claim related to religious pictures.

Accordingly, the motion for a preliminary injunction is denied.  The Clerk of Court is respectfully directed to terminate ECF Nos. 121 and 125.

**SO ORDERED.**

Dated: September 24, 2025
   White Plains, New York

                       _____
                       CATHY SEIBEL, U.S.D.J.